## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRIAN D. WITTNER** )<br>    **3888 McIngvale Road** )<br>    **Hernando, MS 38632** )<br>    )<br>    **Plaintiff,** )<br>    )<br>    **v.** )<br>    )<br>**JONES LANG LASALLE** )<br><u>**Serve**</u>**: Corporation Service Company** )<br>    **1090 Vermont Avenue, N.W.** )<br>    **Washington, DC 20005** )<br>    )<br>    **Defendant.** )  | **Civil Action No. _____** |

## COMPLAINT WITH JURY DEMAND

### INTRODUCTION

Plaintiff, Brian D. Wittner, by counsel, brings this action against Jones Lang LaSalle ("JLL"), and in support thereof, states as follows:

### JURISDICTION

1.  This Court has jurisdiction over the subject matter of this civil action pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §633a-(c), and pursuant to 28 U.S.C. §1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

### VENUE

2.  Venue is proper in this judicial district under 28 U.S.C. §1391(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3.   On December 22, 2015, Mr. Wittner filed a charge of discrimination with the Equal Employment Opportunity Commission's Washington Field Office, 131 M Street, N.E., Washington, DC.

4.   The EEOC accepted the charge, assigned an investigator, but failed to reach a finding.

5.   On July 27, 2016, at Mr. Wittner's request, the EEOC issued a Right to Sue letter, which Mr. Wittner received on July 29, 2016.

## PARTIES

6.   Plaintiff, Brian D. Wittner, a male who is at least 40 years old, is a citizen of the United States and a resident of the State of Mississippi. At all times relevant to this suit, until his termination in October 2015 he was employed with JLL as a Senior General Manager.

7.   Defendant JLL is a corporation organized under the laws of Texas. JLL has more than 500 employees engaged in property management in multiple states and operates a regional office in Washington, DC. Plaintiff was employed out of JLL's Washington, D.C. office and was considered a Washington, D.C. employee.

## STATEMENT OF FACTS

8.   Mr. Wittner was hired by JLL as a commercial property manager in August, 2013. At the time, Mr. Wittner had over 30 years of commercial property management experience.

9.   At the time of his termination from employment with JLL, Mr. Wittner worked out of the office located at 15020 Conference Center Drive, Suite 210, Chantilly, Virginia 20151 as a Senior General Manager.

10. Mr. Wittner's supervisor while employed at JLL was Amanda Breziner, whose title was Group Manager.

11. In August 2015, Mr. Wittner was told by his employer that he would receive a mid-year performance review on August 30, 2015.

12. On August 30, 2015, Mr. Wittner met with Amanda Breziner, and Michelle Doan, the Mid-Atlantic Human Resources Business Partner, was also present.

13. At the August 30, 2015 meeting, instead of the mid-year performance review that Mr. Wittner's employer represented he would receive, Amanda Breziner conducted a termination interview, much to the shock and surprise of Mr. Wittner.

14. During the termination interview, Ms. Breziner informed Mr. Wittner that his employment was being terminated due to "performance issues."

15. Prior to August 30, 2015, Mr. Wittner had never been informed of any deficiencies or problems with his job performance. All of his past performance reviews had rated his performance as "satisfactory." In fact, Mr. Wittner's 2014 performance review resulted in a salary increase and a bonus.

16. During the August 30, 2015 meeting, Ms. Breziner cited a number of alleged deficiencies in Mr. Wittner's performance. In fact, these alleged deficiencies were a pretext to hide JLL's discriminatory intent.

17. For example, Ms. Breziner informed Mr. Wittner that, "For the property 3811 North Fairfax there have been multiple monthly financial reporting packages that included incorrect variance comments."

18. In fact, not a single "incorrect variance comment" had ever been reported to Mr. Wittner, and to date JLL has yet to provide a single example to support this claim.

19. Ms. Breziner also made the vague and nondescript claim that, "For the property 3811 Fairfax the FY2016 budget had mistakes and unclear information." She refused to provide any

examples or details regarding this claim at the meeting. Indeed, not a single example of a mistake or instance of "unclear information" has been brought to Mr. Wittner's attention.

20. Another reason Ms. Breziner proffered for the termination of Mr. Wittner's employment was, "For the property 3811 North Fairfax there is [*sic*] been an on-going issue concluding the Accounts Receivable balance for the former tenant SAIC. Though the history dates before your responsibility of the property, the work of communicating with the company and its lease administration has taken longer than is reasonable to resolve."

21. In fact, although Mr. Wittner's employment with JLL did not begin until August 2013, the balance in the Accounts Receivable for 3811 North Fairfax arose in 2009, when Ms. Breziner herself was responsible for managing the property. This circumstance was also noted in the monthly reporting package that was sent to building ownership prior to Mr. Wittner's assumption of his duties. Although Ms. Breziner failed to take any action on this account for the four (4) years prior to Mr. Wittner's hiring (and was not terminated - to the contrary, she was actually promoted), she purported to use this circumstance as a basis for Mr. Wittner's termination.

22. The third and final claim made as a reason for the termination of Mr. Wittner's employment was, "[f]or the property 3811 North Fairfax the tenant Water & Wall has expressed not feeling comfortable with you."

23. This claim is false and Mr. Wittner intends to call witnesses who will testify that it is pure fiction and without basis or merit.

24. By terminating Mr. Wittner's employment abruptly and without any warning for the performance-related reasons proffered, JLL deviated substantially from its own disciplinary policies and procedures as set forth in the Discipline and Corrective Action guidelines set forth in the Jones Lang LaSalle Policy and Procedure ("The Guidelines").

25. The Guidelines provide procedures for taking disciplinary action up to and including discharge.

26. The first step provided by the Guidelines is for a "Documented Verbal Counseling" to identify an employee's performance deficiencies, steps for improving those deficiencies and possible consequences for the employee's failure to improve performance.

27. Mr. Wittner received no Documented Verbal Counseling prior to his termination, despite the fact that such an action would have been the simplest and most appropriate action to address the alleged performance concerns expressed by Ms. Breziner during the August 2015 meeting.

28. The Guidelines also provide for the further step of providing an employee with a "Written Warning" as a more serious disciplinary action which would have provided Mr. Wittner with documentation that identified the performance deficiencies, steps to improve performance, and possible consequences should he fail to improve performance.

29. Again, Mr. Wittner was denied a Written Warning prior to termination of his employment with JLL, despite the fact that a written warning would have been far more appropriate means of addressing any alleged performance deficiencies of an employee with thirty (30) years of property management experience than termination.

30. The Guidelines also establish "Administrative Leave" as an option available as a disciplinary action prior to termination. Administrative Leave involves the temporary removal of an employee from the workplace during an investigation, with or without pay.

31. Ms. Breziner did not explore the possibility of placing Mr. Wittner on Administrative Leave prior to termination which, despite the severity of such a measure, would have still been a much more appropriate means to correct any alleged performance deficiency that Ms. Breziner identified during the August 2015 meeting.

32. At no time prior to the termination of his employment with JLL was Mr. Wittner made aware of any performance deficiencies or that there should be any cause for concern. In fact, Defendant never notified Mr. Wittner his job performance was an issue in any way.

33. Mr. Wittner was not invited to any disciplinary meeting, and he did not know that Michelle Doan would be present at the August 30, 2015 meeting.

34. Following the termination of Mr. Wittner's employment, Defendant hired as his replacement Carla Hyatt, who is significantly younger than Mr. Wittner, has less experience than Mr. Wittner, and who is outside the protected class under the Age Discrimination in Employment Act of 1967.

## COUNT I

### (Age Discrimination in Violation of the Age Discrimination in Employment Act of 1967)

35. Plaintiff restates paragraphs 1-34 and incorporates them by reference herein.

36. At the time of his termination, Mr. Wittner was at least 40 years of age and was fully and satisfactorily performing his work tasks.

37. Mr. Wittner was replaced by a younger employee outside the protected class of the ADEA.

38. The Defendant's conduct as alleged above constitutes discrimination based on age in violation of the Age Discrimination in Employment Act of 1967. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to mask the Defendant's discriminatory animus.

## COUNT II

### (Age Discrimination in Violation of the District of Columbia Human Rights Act)

39. Plaintiff restates paragraphs 1-38 and incorporates them by reference herein.

40. The Defendant's conduct as alleged above constitutes discrimination based on age in violation of the District of Columbia Human Rights Act. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to mask the Defendant's discriminatory animus.

### Prayer for Relief

WHEREFORE, the Plaintiff requests that the Court award him:

(a) All attendant back pay, benefits and other emoluments of employment with prejudgment interest dating back to August 30, 2015;

(b) Front pay (including pay increases) until he reaches the age of 67.25, when he would have retired from employment but for Defendant's discriminatory treatment;

(c) The sum of Three Hundred Thousand Dollars ($300,000.00) in compensatory damages suffered because of the discrimination;

(d) Costs and reasonable attorneys' fees incurred in this lawsuit with interest thereon; and

(e) Other damages and further relief as this Court deems just.

### JURY DEMAND

Plaintiff requests trial of this matter by jury.

Respectfully submitted,

TOBIN, O'CONNOR & EWING

By:     /s/ David C. Tobin
        David C. Tobin, Esq., D.C. Bar #395959
        dctobin@tobinoconnor.com
        Ziad P. Haddad, Esq., D.C. Bar #469470
        zphaddad@tobinoconnor.com
        5335 Wisconsin Avenue, N.W., Suite 700
        Washington, D.C. 20015
        Tel:    (202) 362-5900
        Fax:    (202) 362-6579
        *Counsel for Plaintiff*